**John Robert CLARE, Individually and as Representative of Those Certain Underwriters at Interest at Lloyd's London Subscribing to Certificate of Insurance No. TSL 17198, Plaintiff and Counter–Defendant,**

v.

**Jim RICHARDS and City National Bank of Sulphur Springs, Defendants and Third–Party Plaintiffs,**

v.

**TEXAS SPECIALTY FINANCE, INC., Third–Party Defendant.**

**No. 3:97–CV–39.**

United States District Court, E.D. Texas, Paris Division.

Jan. 19, 1998.

John Baldwin Geddie, Greenberg Peden et al., Houston, TX, for John Robert Clare.

Larry A. Powers, Powers & Blount, Sulphur Springs, TX, Craig Michael Daugherty, Tyler, TX, for Jim Richards, City National Bank of Sulphur Springs.

E. Stratton Horres, Jr., Amherst Robert Lamb, Jr., Wilson Elser Moskowitz Edelman & Dicker, Dallas, TX, for Texas Specialty Finance, Inc.

*MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION*

SCHELL, Chief Judge.

This matter is before the court on Plaintiff's Motion for Reconsideration and Motion

for Clarification filed on November 20, 1997. Defendants filed a response to Plaintiff's motion on December 12, 1997. Plaintiff filed a reply to Defendants' response on December 22, 1997. Upon consideration of the motion, response, reply, and applicable law, the court is of the opinion that Plaintiff's motion should be GRANTED.

## I. BACKGROUND

Most of the facts giving rise to this cause of action are detailed in the court's opinion reported at *Clare v. Richards,* 979 F.Supp. 487 (E.D.Tex.1997), and need not be recited here. The facts included here are referred to only for clarification or as necessary for the disposition of Plaintiff's motion.

"The facts in this case are not in dispute." *Id.* at 488. This declaratory judgment action revolves around a fire insurance policy (the "Policy") issued to John H. Heilman ("Heilman") by Texas Specialty Underwriters ("Underwriters"). Underwriters issued the Policy on behalf of Plaintiff. When a fire destroyed the insured property on February 9, 1997, Defendants City National Bank ("City National") and Jim Richards ("Richards") demanded payment under the Policy. Plaintiff denied payment, claiming that Heilman's premium finance company, Texas Specialty Finance, Inc. ("TSF"), had canceled the Policy effective January 31, 1997, pursuant to its power of attorney. Plaintiff subsequently filed this lawsuit "seeking a declaratory judgment declaring that (1) the Policy was canceled as to the interests of Defendants effective January 31, 1997, and (2) Underwriters have no duty to indemnify Defendants for any losses resulting from the February 9, 1997, fire." *Id.*

The court denied Plaintiff's motion for summary judgment. *Id.* at 493. Central to the court's holding was the fact that both Plaintiff and Defendants referred to Richards and City National collectively as "mortgagees." *Id.* at 490 (stating that the parties did not contend that City National and Richards were not entitled to mortgagee status).

The court was therefore led to believe that no material issue of fact existed as to whether Richards and City National were mortgagees. Consequently, the primary question before the court was a legal one: As mortgagees, were Richards and City National entitled to the protection of Article 6.15? The court answered this question in the affirmative, holding that under Texas law Article 6.15 of the Texas Insurance Code:

> became a part of ... the Policy the moment Underwriters issued the Policy. Under Article 6.15, neither the acts of Heilman nor TSF, through its power of attorney, served to cancel the Policy as to the interests of City National or Richards. Further, Underwriters did not give reasonable notice of cancellation to City National and Richards. Therefore, the court cannot rule as a matter of law that (1) the Policy was canceled as to the interests of Defendants on January 31, 1997, or (2) that Underwriters have no duty to indemnify Defendants for their losses incurred as a result of the February 9, 1997, fire.

*Id.* at 493. Accordingly, the court denied Plaintiff's motion for summary judgment.

Plaintiff now informs the court that the parties incorrectly referred to Richards as a mortgagee when, in fact, he is a mortgagor. Defendants concede this fact. Defs.' Response to Pl.'s Mot. for Reconsideration and Mot. for Clarification at 2 ("Defs.' Response").[1] Thus, Plaintiff continues, Richards is (1) not entitled to the protection afforded by Article 6.15 and (2) not entitled to receive any proceeds under the Policy. Consequently, Plaintiff now moves the court to reconsider or clarify its earlier order denying Plaintiff's motion for summary judgment and, instead, to grant summary judgment in favor of Plaintiff as to Richards.[2]

## II. ANALYSIS

### A. *Timeliness of Defendants' Response*

■ As a threshold matter, the court must determine whether it will consider Defen-

---

**1.** Thus, there is no genuine issue of material fact as to this issue.

**2.** Plaintiff does not challenge the propriety of the court's order denying summary judgment in favor of Plaintiff as to City National. Therefore,

that part of the court's order addressing Plaintiff's claims against City National is neither at issue at this time nor affected by the court's disposition of the present motion.

dants' response when deciding Plaintiff's motion. Plaintiff argues that Defendants' response was untimely under Local Rule CV–7(d). Pl.'s Reply to Defs.' Response to Pl.'s Mot. for Reconsideration and Mot. for Clarification at 3 ("Pl.'s Reply") (citing E.D.Tex. Local R. CV–7(d)). Plaintiff is correct in this argument and the court finds that Defendants filed their response two days late.

■ Local Rule CV–7(d) requires that all responses to motions be in accordance with the timetable set out in Local Rule CV–7(e). E.D.Tex. Local R. CV–7(d). Local Rule CV–7(e) states, in relevant part: "A party opposing a motion has 10 days in which to serve and file supporting documents and briefs after which the court will consider the submitted motion for decision." *Id.* CV–7(e). The court construes this provision to mean that a motion is ripe for consideration by the court after ten days. If no response has been received by that time, the court may assume that the motion is unopposed and may issue a ruling. *Id.* CV–7(d). If the court has not yet considered a motion, however, and a response is filed after the ten day period, the court may still consider the response at its discretion.

Here, Plaintiff has not alleged or proven that it would suffer prejudice if the court entertained Defendants' untimely response. The court does not condone missing deadlines set by the local rules and, under certain circumstances, would not consider an untimely response. Nevertheless, the court is not convinced that, under these facts, Defendants' response was so late as to require the court to strike it from consideration. Accordingly, the court will consider Defendants' response when deciding Plaintiff's motion.

### B. *Plaintiff's Motion for Reconsideration and Motion for Clarification*

■ Like the court's order denying Plaintiff's motion for summary judgment, the only questions presently before the court are questions of law. The primary question before the court can best be stated as follows: As a mortgagor, was Richards entitled to the statutory protection of Article 6.15 as inter-

preted by the Fifth Circuit in *Standard Fire Ins. Co. v. United States,* 407 F.2d 1295, 1299 (5th Cir.1969)? · If the answer to this question of law is in the affirmative, then the court's earlier order would be unaffected by the fact that Richards is a mortgagor as opposed to a mortgagee. If the answer to this question is in the negative, however, then the court must find that the Policy was canceled as to the interests of Richards prior to the February 9, 1997, fire, and that Plaintiff does not owe a duty to indemnify Richards for his losses resulting from the fire. In the case of the latter, summary judgment in favor of Plaintiff would be proper as to his claim for declaratory judgment against Richards.[3]

Article 6.15 of the Texas Insurance Code provides:

> The interest of a ***mortgagee or trustee*** under any fire insurance contract hereafter issued covering any property situated in this State shall not be invalidated by any act or neglect of the mortgagor or owner of said described property or the happening of any condition beyond his control, and any stipulation in any contract in conflict herewith shall be null and void.

Tex.Ins.Code Ann. art. 6.15 (Vernon 1981) (emphasis added). In the present case, Article 6.15 became a part of the Policy at the moment it was issued. *Clare v. Richards,* 979 F.Supp. 487, 493 (E.D.Tex.1997). Because City National is a mortgagee, it was entitled to the protection afforded by Article 6.15. At issue here, however, is whether Richards, who is not a mortgagee, is entitled to the same level of protection as City National.

Plaintiff contends that Richards is not entitled to the protection of Article 6.15 because "Article 6.15 is limited to the interest of a **mortgagee or trustee.** Defendant Richards is not a mortgagee or trustee." Pl.'s Reply at 3. Defendants argue that the protection of Article 6.15 should extend to Richards even though he is a mortgagor.

To determine whether a mortgagor is entitled to the protection of Article 6.15, the

---

**3.** In deciding whether summary judgment is indeed proper, the court will apply the summary judgment standards as discussed in *Clare v. Richards,* 979 F.Supp. 487, 489 (E.D.Tex.1997).

court must first use ordinary principles of statutory construction. One of the most basic principles is the rule that "where the language of a statute is unambiguous, [courts must] give effect to the statute according to its terms." *Maley v. 7111 Southwest Freeway, Inc.*, 843 S.W.2d 229, 231 (Tex.App.— Houston [14th Dist.] 1992, writ denied). Another fundamental principle of statutory construction is the rule that "an express listing of certain persons, things, consequences, or classes is equivalent to an express exclusion of all others." *Id.*

The scope of Article 6.15 is unambiguous. Article 6.15 expressly states that it applies to the interests of mortgagees and trustees; it says nothing about the interests of mortgagors. The court can only infer that the legislature's omission of the word "mortgagor" was intentional. The statute must therefore be given effect according to its terms. Further, Article 6.15 lists only two classes which are entitled to protection: mortgagees and trustees. TEX.INS.CODE ANN. art. 6.15 (Vernon 1981). The listing of mortgagees and trustees can only be seen as an express exclusion of other persons or classes such as mortgagors. Thus, it cannot be said that mortgagors are included among the classes of persons protected by Article 6.15. To hold otherwise would be inconsistent not only with the express language of Article 6.15, but also with its purpose—to protect a *mortgagee or trustee* from the legal consequences of any act or omission by the owner or mortgagor. *See Standard Fire Ins. Co. v. United States*, 407 F.2d 1295, 1299 (5th Cir.1969) (discussing the purpose of Article 6.15).

Here, Richards owned the property destroyed in the February 9, 1997, fire. Richards leased this property to Heilman. City National holds a security interest in this property as mortgagee. While City National is a mortgagee and falls within the class of protected persons under Article 6.15, Richards can only be classified as an owner or mortgagor. Therefore, Richards is not within the class of persons expressly afforded protection under Article 6.15.

Defendants nevertheless maintain that Richards should be entitled to the protection of Article 6.15 despite the fact that he is not a mortgagee or trustee. Defendants make four points in support of this argument. First, Defendants argue that Richards should have been given notice of cancellation under Article 6.15 because he was listed as an "additional interest" on Heilman's application for insurance and named in the "special conditions" section of the Policy. Defs.' Response at 2. Second, Defendants argue that Richards is entitled to protection under Article 6.15 because his interest in this case is identical to the interests of the mortgagees afforded protection in *Standard Fire*. Third, Defendants argue that Richards is entitled to the protection of Article 6.15 because Texas law recognizes that a lessor has a right to proceeds under an insurance policy secured by his lessee. Finally, Defendants argue that Richards should be entitled to the same protection as City National because Richards' interest in receiving notice of cancellation was identical to that of City National. The court will address each argument in turn.

In support of their first argument, Defendants rely upon the court's holding in *Westchester Fire Insurance Co. v. English*, 543 S.W.2d 407 (Tex.Civ.App.—Waco 1976, no writ). In *Westchester Fire*, a mortgagor obtained an insurance policy on property secured by a vendor's lien and note held by his mortgagee. *Id.* at 414. When the mortgagor applied for the policy, he told his insurance agent that he "wanted insurance 'to protect [the mortgagee's] part of the property....'" *Id.* When the property was destroyed by fire, the mortgagee discovered that the agent had failed to list her as a loss payee or additional interest on the policy. *Id.* The mortgagee sued, claiming that she had a right to the insurance proceeds because the insurance company was aware of her interest in the property insured under the policy. The trial court entered judgment in favor of the mortgagee and the appellate court affirmed, holding that a *mortgagee* is entitled to proceeds under an insurance policy if the insurance agent knows of and is instructed to protect the mortgagee's interests, yet negligently fails to name the mort-

gagee as a loss payee under the policy. *Id.* at 415.

In the present case, Defendants rely on *Westchester Fire* for the proposition that if an insurance company is "aware of the additional interests[,] that knowledge constitutes a waiver of any requirement that the mortgagee be named as an insured in the policy." Defs.' Response at 2.[4] Thus, Article 6.15 should be used to protect Richards just as if he was listed as a mortgagee under the Policy.

The Defendants give *Westchester Fire* too broad an interpretation. Defendants are correct that a *mortgagee* may be entitled to protection under Article 6.15 even if not named in the policy. *See Richards,* 979 F.Supp. 487, 490 ("Article 6.15 does not require that the protected mortgagee be mentioned in the insurance contract either by name or by status.") (internal quotations omitted). The rule is not helpful to Defendants here, though, because Richards is not a mortgagee. The court in *Westchester Fire* did not hold that *any party* listed as an additional interest on an insurance policy is automatically entitled to the proceeds of that policy. Rather, the court merely held that the *mortgagee* in that case was entitled to proceeds under an insurance policy because an insurance agent negligently failed to follow instructions to protect the interests of the mortgagee. No such facts are present in this case. First, Richards is not a mortgagee. Further, there is no claim that the insurance agent in this case negligently failed to follow instructions to include Defendants as loss payees under the Policy. Finally, unlike the policy in *Westchester Fire,* the Policy in this case was terminated prior to the event destroying the insured property. Therefore, the court's holding in *Westchester Fire* is of no assistance to Richards in this case.

Defendants next argue that Article 6.15 should be extended to protect Richards' interests because his interests are similar to those of the parties in *Standard Fire.* Defendants claim that the secured parties in *Standard Fire* were not "mortgagees in the usual sense that term is used . . . [i]nstead, their loan . . . was secured . . . by a lien on personal property." Defs.' Response at 3. Defendants contend that Richards' interests were also secured by a lien on personal property— a statutory lien held by landlords to secure a tenant's rental payments—and, therefore, he is entitled to the same protection afforded the mortgagees in *Standard Fire.*

The principal flaw in Defendants' argument is that the Fifth Circuit's focus in *Standard Fire* was not upon the *type* of security interest held by the parties seeking insurance proceeds but, instead, upon *why* the parties held their respective security interests. *See Standard Fire,* 407 F.2d at 1299 n. 5. In that case, the Fifth Circuit found that the plaintiffs, which were seeking proceeds under the policy, were mortgagees because they "had received a pledge of the insured property as security for a loan, and thus had the status of mortgagees entitled to the protection of Article 6.15. . . ." Because the plaintiffs were mortgagees, they fell within the class of persons entitled to protection under the letter of Article 6.15. *Id.*

Whether Richards holds a security interest in property similar to that of the parties in *Standard Fire* is not material to the issue of whether he is entitled to the protection of Article 6.15.[5] What is material to this issue is whether he is a mortgagee or mortgagor. Unlike the parties in *Standard Fire,* Richards did not receive a pledge of property as security for a loan. Consequently, Richards was not a mortgagee and does not fall within the class of persons found by the Fifth Circuit to be entitled to protection under Article 6.15 in *Standard Fire.*[6]

---

**4.** Plaintiff concedes that Richards was named as an additional interest on Heilman's insurance application and listed under the special conditions section of the Policy.

**5.** Since the type of security interest held by Richards is not relevant to the court's disposition of this motion, the court will not address the issue

of whether Richards did, in fact, hold a statutory lien on the insured property under Texas law.

**6.** Defendants also claim that the court in *Boston Ins. Co. v. Rainwater,* 197 S.W.2d 118 (Tex.Civ. App.—Amarillo 1946, no writ) extended the protection of Article 6.15 to *mortgagees or lien holders.* Defs.' Response at 4. Defendants contend that this case demonstrates that Article 6.15 must

Defendants next argue that "Texas courts ... have frequently held that a lessee's failure to include the lessor as a payee on a contract of insurance impresses the insurance policy with a lien in favor of the lessor." Defs.' Response at 4. Defendants point to *Farmers Ins. Exchange v. Nelson*, 479 S.W.2d 717 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.), in support of this argument. In *Nelson*, the court held "that a breach by a lessee of a contract to insure the leased property for the benefit of his lessor will charge the benefits of any insurance taken out by the lessee on the leased property with a lien in favor of the lessor...." *Id.* at 721. Other Texas courts have held that "if a lessee agrees to obtain insurance on property with loss payable to the lessor but fails to do so, equity will treat the policy as having contained the loss payable provision and entitle the ... lessor to recover under the policy." *Cable Communications Network, Inc. v. Aetna Casualty & Surety Co.*, 838 S.W.2d 947, 950 (Tex.App.—Houston [14th Dist.] 1992, no writ).

At first glance, it would appear that the above cases offer support to Defendants' argument that Richards, as lessor, should be entitled to receive the proceeds from the Policy obtained by his lessee, Heilman. If the Policy had not been canceled prior to the February 9, 1997, fire, that may have been the case; however, it is not. Unlike the insurance policies in the above cases, the Policy in this case was canceled prior to the event which destroyed the insured property. Thus, there was no insurance policy under which Richards, as lessor, could claim a right to recovery. The only way that Richards would be entitled to recover under the Policy is if he were entitled to the protection of Article 6.15. If that were the case, then the Policy would not have been canceled as to his interests prior to the fire because he did not

receive reasonable notice of cancellation. That is not the case, however, because Richards is not a mortgagee or trustee. Any rights to the Policy proceeds which Richards may have had by virtue of his status as a lessor ceased to exist when the Policy was canceled.

Finally, Defendants argue that Richards should be entitled to the same protection under Article 6.15 as City National because Richards "required Heilman to carry insurance, as is routinely done by all landlords. Richards then had an insurable interest undistinguishable from the insurable interest of City National Bank." Defs.' Response at 4. The court does not agree.

While both Defendants have a significant interest in the property destroyed by fire, Richards' interest is distinguishable from City National's. City National is a mortgagee, Richards is not. As previously discussed, therefore, City National falls within the class of persons entitled to protection under Article 6.15 and Richards does not. The legislature expressly listed mortgagees and trustees as the two classes entitled to the protection of Article 6.15. After a diligent review of the law in this area, the court has not found any authority suggesting that the type of protection afforded by Article 6.15 should be extended to other interested parties such as lessors or mortgagors. The legislature simply has not extended this type of protection to lessors or any other parties claiming an interest in property insured under a fire insurance policy, and neither will this court.

### III. CONCLUSION

Pursuant to its power of attorney, TSF canceled the Policy effective January 31, 1997. This cancellation was not effective as to City National because it was not given reasonable notice as required under Article

---

be interpreted broadly enough to include "all of those parties who have a legitimate interest in securing the value of the insured property by the issuance of a fire insurance policy." *Id.* The court does not agree. While it is true that the court in *Rainwater* did state that the "mortgages or lien holders" in that case were entitled to the protection afforded to by the statute, *Rainwater*, 197 S.W.2d at 125, the case cannot be read as holding that all lien holders fall within the class

of persons so protected. Indeed, it is clear that the court in that case simply used the terms lien holder and mortgagee interchangeably when referring to the mortgagee plaintiffs. *Id.* at 120. Each plaintiff in *Rainwater* was a mortgagee. *Id.* Thus, when the court used the term lien holder, it was referring to a mortgagee. As previously discussed, Richards is not a mortgagee. Thus, the court's holding in *Rainwater* is of no assistance to Richards in this case.

6.15 and the Fifth Circuit's holding in *Standard Fire*. For the same reason, this court held in its earlier opinion that the cancellation was not effective as to Richards. The court reached this conclusion because the parties represented to the court that Richards, like City National, was a mortgagee. The parties now agree, however, that Richards is not a mortgagee. Therefore, for the reasons stated above, Richards was not entitled to the protection of Article 6.15 at the time the Policy was canceled. Accordingly, Plaintiff's Motion for Reconsideration and Motion for Clarification is GRANTED. Further, Plaintiff's Motion for Summary Judgment is GRANTED IN PART, insofar as it applies to Plaintiff's claim for a declaratory judgment declaring that (1) the Policy was canceled as to the interests of Richards effective January 31, 1997, and (2) Plaintiff has no duty to indemnify Richards for any losses resulting from the February 9, 1997, fire. For the reasons stated in the court's order of October 31, 1997, denying Plaintiff's motion for summary judgment, Plaintiff's Motion for Summary Judgment is DENIED IN PART, insofar as it applies to the interests of City National. It is so ORDERED.